[Criminal No. 841. Filed July 13, 1936.]

[59 Pac. (2d) 331.]

EARL HECKETHORN, Appellant, v. STATE OF ARIZONA, Respondent.

152

Mr. H. L. Russell and Mr. F. M. Gold for Appellant.

Mr. John L. Sullivan, Attorney General, and Mr. W. Francis Wilson, Assistant Attorney General, Mr. H. K. Mangum, County Attorney of Coconino County, and Mr. Orin B. Compton, Assistant County Attorney, for Respondent.

McALISTER, J.—On the 14th day of November, 1935, the County Attorney filed in the superior court of Coconino county an information charging that on

the first day of June, 1935, one Earl Heckethorn "did, then and there wilfully, unlawfully, deliberately, feloniously and knowingly brand a neat animal to wit: a red heifer calf, the personal property of one C. E. Thomson, with a brand other than the recorded brand of the owner, to wit: the recorded brand of the said Earl Heckethorn, with the felonious intent then and there to convert said animal to his own use." The jury returned a verdict of guilty, and from the judgment, a sentence in the state prison, and a denial of his motion for a new trial, the defendant appeals.

The animal in question was a red heifer calf about nine or ten months old. The defendant admitted branding it but claimed that he did so because it was his. The testimony which was directed largely toward the question of ownership was very conflicting. That introduced by the state justified the conclusion of the jury not merely on the question of ownership but upon every other element necessary to constitute the charge alleged in the information. Hence, it is not necessary to state the evidence in full but only so much of it as is essential to an understanding of the errors assigned.

It appears from the state's testimony that C. E. Thomson, the complaining witness, and his wife lived about seven miles south of Flagstaff on a five-acre ranch where they had some chickens, some fox and four head of cattle, to wit, a cow, a heifer, and two calves, the cow having been acquired in the spring of 1933 from a Mr. Kennedy of Flagstaff in exchange for an electric sewing-machine they could not use on the farm where there was no electricity. It was a dun-colored Jersey and was dry at the time but in the early part of July, some three or four months after it was traded for and taken to the farm, had

a heifer calf, which, within a few days after its birth in the pasture of the Thomsons, was moved to the chicken enclosure right by their residence, where it was kept and fed milk from a bucket. Two or three months later they branded a ''T'' about an inch and a half long on top of each horn, put a weaner on it and let it run with its mother, which it did until early in May, 1934, when it disappeared. Mr. Thomson, with the aid of others, spent much time hunting for it but saw nothing of it until late in the afternoon of July 4, 1934, when he, his wife and a close neighbor, a Mr. Laxton, came across it east of the Oak Creek road about a quarter of a mile from the house with three other young calves. They could not catch it then, because other calves were with it, but on the afternoon of July 10th Mr. Thomson, H. T. Hill and the latter's brother found it in a herd of forty or fifty head of cattle while riding on the west side of the Hewett ranch about four miles from the Thomsons' place, recognized it, drove it home, and put it in the chicken enclosure. Notwithstanding it had been dehorned, earmarked and branded double A connected on the left shoulder, they testified that they knew from its color, two white spots it had, one at the tip of its tail and one under its belly, and an enlarged navel that it was the calf that was born on the premises of the Thomsons the early part of July, 1933, and Mr. Laxton, who saw it almost daily around the Thomsons' ranch from the fall of 1933 until it disappeared, stated that it was the same animal.

The testimony showed further that the Thomsons had no brand, and a certificate of the Livestock Sanitary Board, introduced in evidence by the state, disclosed that the double A connected on the left

shoulder was the recorded brand of the defendant, Earl Heckethorn.

In support of the defense that the animal belonged to the defendant, his mother, who at the time of the trial was seventy-one years of age and living in Flagstaff, testified that she was at her ranch four miles east of there the first week in June, 1933, and saw the calf born as she was shucking corn in the granary. The cow, having been kept in the corral because they usually hide their calves, experienced some difficulty in delivering it, and this resulted in an enlarged navel around which was a white spot. It belonged to her son Earl, the owner of its mother, and stayed about the ranch until it was taken away. She thought the calf she saw after July 10, 1934, at the Thomsons' ranch as she passed there was this same animal, the one she saw born at her ranch in June, 1933, because it looked just like it. Milk pen calves are not branded sometimes until they are four or five months old.

The defendant testified that the calf was born in June, 1933, at the ranch four miles east of Flagstaff of a brindle Jersey cow belonging to him; that he saw it the next day and noticed it had a white spot around its navel, which was somewhat enlarged, and one at the tip of its tail, and that it ran with its mother until March 10, 1934, when he, aided by Ross Heckethorn, Lawrence Koger, G. W. McCormick and Ernest Swafford, branded it along with two other calves at the ranch. The day following, or on March 11, 1934, he and Lawrence Koger took it to his pasture eleven miles south of Flagstaff. The four persons just mentioned testified that they helped the defendant brand the calf on March 10, 1934, and two or three of them said that they saw the same calf at Thomsons' place about four months later. Lawrence

Koger stated that he raised its mother and Ernest Swafford that he milked her when the calf was young.

The evidence discloses that the brand had not healed when the calf was brought to the home of the Thomsons on July 10th, four months after the day on which the defendant testified he branded it. Thomson's testimony was that the calf disappeared the first of May, 1934, unbranded, and a number of witnesses testified relative to the time it takes a brand to heal, those introduced by the state saying that it heals generally from four to six weeks, while those for the defendant stated that one could not tell just how long it would take but that it was sometimes as much as three or four months.

With the two foregoing versions of the occurrence before it, the jury decided that the one related by the state's witnesses was correct, that is, that the calf was the property of C. E. Thomson and that the defendant had branded it with a brand other than C. E. Thomson's, to wit, the brand of the defendant, a double A connected on the left shoulder, with the intent feloniously to convert it to his own use, and it is clear that the evidence, though greatly in conflict, supports its action in this respect. That introduced by the defendant, if believed by the jury, would have justified a verdict for him, but the jury is the sole judge of the weight of the testimony and since it concluded that the witnesses for the state related the transaction correctly the assignment that the verdict is contrary to the evidence is without merit. This conclusion is, of course, based upon the theory that the evidence upon which the jury acted was properly in the record, though the defendant complains in the next assignment considered that such is not the case.

Early in the trial the county attorney asked Mrs. Thomson a question in which he sought to elicit from her the oral statement that the calf was the property of her and Mr. Thomson and the defendant's objection to it upon the ground that it was not the best evidence was overruled. The court's action in this respect is assigned as error, the contention being that since the owners of the calf had no recorded brand and the evidence disclosed that it was range stock that had been turned out on the open range of this state by its owners unbranded, the defendant could not, by placing his brand on the calf, have sinned against the statute, because the person claiming the calf and whose brand should have been put on it if he was its owner, must necessarily have had a recorded brand before this could have been done. In other words, one can commit the offense of feloniously placing his brand on the range animal of another with the intention to convert it to his own use only when such other person is the owner of a recorded brand.

The appeal is based almost entirely on this proposition and in support of it the defendant relies upon certain provisions of chapter 43, Session Laws of 1931, the livestock law of this state as it exists at the present time. Section 18 of that act provides that "every person owning range live stock in this state shall adopt and record a brand and earmark with which to brand and mark neat animals" (the law theretofore, section 2113, Revised Code of 1928, being permissive only) and section 11 (Revised Code of 1928, § 2106, as amended by Laws 1931, chap. 43, § 11, as amended by Laws 1933, chap. 68, § 1) makes it "unlawful for any owner of range livestock to permit such stock, excepting unweaned animals running with their mothers, to roam and

feed upon the ranges in this state unless branded and marked as prescribed by law." Because of this language, he argues that the legislature intended to and did provide that every person who owns range livestock and, without adopting and recording a brand, permits such stock to feed upon the ranges of this state unbranded, is prohibited, when ownership of such stock is questioned, from showing that it belongs to him. His failure to adopt and record a brand and place it on the animal before turning it on the open range has the effect, he claims, of depriving him of the right to make this proof. The purpose of the law, as he views it, is to confine one in establishing ownership of range livestock to the introduction of a certified copy of his recorded brand, or, in case the animal has been purchased, by producing, pursuant to section 21, a written and acknowledged bill of sale from the vendor to the purchaser. This view can be upheld only on the theory that the legislature intended to authorize the owner of a recorded brand to place it on any unbranded animal found on the open range, except an unweaned calf running with its mother, and this regardless of the fact that the person doing the branding knows full well that the animal does not belong to him. The effect of such a holding would be equivalent to saying that the theft of cattle has been authorized by the legislature in certain instances, and it is needless to say that no such thought was ever entertained by the members of that body.

The fact that the owner of range livestock is required to adopt and record a brand together with the fact that it is unlawful for him to permit his stock to feed on the range unbranded does not mean that his failure to comply with these provisions gives another the right to place that other's brand on his

animal when the person doing the branding knows the animal is not his; in other words, does not authorize him to steal it. It is true that section 20, chapter 43 (amending Rev. Code 1928, § 2115), provides that the appearance on an animal of a recorded brand shall be taken as *prima facie* evidence that the animal bearing the brand is the property of the owner of the brand, but this does not signify that the legislature has made the brand conclusive proof of ownership or that proof thereof can be made in no other way. The fact that prior to the adoption of the 1928 Code the statute specifically provided that ownership of animals might be established independently of a brand, paragraph 3759, Revised Statutes of 1913 (Civil Code), and that following that revision the specific language to that effect was no longer a part of the statute, do not imply that the legislature attempted to provide that the common-law rules of evidence by which the ownership of personal property, range cattle included, is established, no longer apply in Arizona. If it had done so the question would naturally arise whether it has the constitutional power to enact such a provision but since it has undertaken nothing of that kind there is no occasion to discuss the matter now. However, this much is true, it will not be held that legislation of this character has been enacted until it is plain from the language used that the legislature entertained such a purpose. It would seem to be clear that the mere fact that one permits a neat animal to feed on the range unbranded could have no bearing whatever on the guilt or innocence of a person who, knowing it is not his, places his brand on it with the intent to convert it to his own use. His right to stamp it with this one indicia of ownership is not created, added to or lessened by the fact that its owner has

no recorded brand. Whatever may be the effect of this fact in other proceedings, it does not authorize one to brand in his brand an animal in which he has no interest whatever and knows it. By its verdict of guilty the jury necessarily found not merely that the calf was not the property of the defendant but that he knew this and placed his brand on it anyway, regardless of that fact.

The various provisions of the livestock law relating to the branding of range animals are important and necessary to the protection of that industry and will be enforced, but it certainly was never intended that they should be used as a means of shielding one guilty of grossly violating them.

The appeal could, perhaps, be disposed of just as satisfactorily upon the other theory advanced by the state, that is, that under the evidence, the calf was a domestic, and not a range, animal, and, hence, that the provisions of the branding statute have no application in the case, for there is scarcely any doubt but that it was in fact a domestic animal; but in view of the consequences that might follow the failure to disapprove the proposition that the fact that the owner of the calf had no recorded brand rendered it impossible for the defendant, by placing his brand on it, to commit the crime of branding an animal with a brand other than the recorded brand of the owner with the intent to feloniously convert it to his own use, as defined in section 4851 of the Revised Code of 1928, we think it best to base the decision upon this ground.

Several other errors are assigned but in view of the conclusion reached on the principal contention in the case it is unnecessary to discuss them. The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.